In re Se. Eye Ctr. (Pending Matters), 2020 NCBC 9.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
|---|---|
| WAKE COUNTY | 15 CVS 1648 |
| IN RE SOUTHEASTERN EYE CENTER-PENDING MATTERS | **ORDER AND OPINION ON KAY HARRIS TURNER'S MOTION TO INTERVENE, TURNER'S MOTION TO REMOVE THE $2.1 MILLION JUDGMENT AGAINST JDPW TRUST AND TO REMOVE JDPW TRUST FROM RECEIVERSHIP, AND PLAINTIFFS' MOTION TO DISQUALIFY DOUGLAS S. HARRIS AS COUNSEL FOR TURNER (OLD BATTLEGROUND V. CCSEA)** |

1. **THIS MATTER** is before the Court upon (i) the Motion of the Sole Beneficiary of JDPW Trust, Kay Harris Turner ("Turner"), to Intervene Pursuant to Rule 24 of the North Carolina Rules of Civil Procedure ("Motion to Intervene"), (ECF No. 1182); (ii) Turner's Motion to Remove the $2.1 Million Judgment Against JDPW Trust and to Remove JDPW Trust from Receivership Pursuant to Rule 60(b)(4)(5)(6) ("Rule 60(b) Motion") (together with the Motion to Intervene, "Turner's Motions"), (ECF No. 1176); and (iii) Plaintiffs Old Battleground Properties, Inc. and Nivison Family Investments LLC's (collectively, the "Nivison Parties") Motion to Disqualify Douglas S. Harris ("Harris") as Counsel for Turner ("Motion to Disqualify"), (ECF No. 1196), (collectively, the "Motions").

2. Having considered the Motions, the related briefing, and the arguments of counsel at the hearing on the Motions, the Court **GRANTS** the Motion to Disqualify and **STRIKES** the Motion to Intervene and Rule 60(b) Motion, including supporting

briefs and materials, without prejudice to Turner's right to refile or renew either Motion prior to March 16, 2020.

> *Smith Debnam Narron Drake Saintsing & Myers, LLP, by Byron L. Saintsing, for Plaintiffs Nivison Family Investments, LLC and Old Battleground Properties, Inc. and Third-Party Defendant Arthur Nivison.*
>
> *Oak City Law LLP, by Robert E. Fields, III, for Receiver Gerald A. Jeutter, Jr., as Receiver for JDPW Trust U/T/A Dated June 8, 2007, Central Carolina Surgical Eye Associates, P.A., HUTA Leasing LLC, Southeastern Eye Management, Inc., Southeastern Cataract Laser Center, PLLC, EMS Partners, LLC, KEPES Newco, LLC, and DRE Newco, LLC.*
>
> *Wyatt Early Harris Wheeler, LLP, by Scott F. Wyatt and Donavan J. Hylarides, for Defendants Richard A. Harris, Historic Castle McCulloch, LLC, and Castle McCulloch, Inc.*
>
> *Douglas S. Harris, pro se.*
>
> *Douglas S. Harris for Kay Harris Turner, in her alleged capacity as the beneficiary of JDPW Trust U/T/A Dated June 8, 2007.*

Bledsoe, Chief Judge.

I.

BACKGROUND

3.     The factual and procedural background of this case is extensive and complex.  A detailed background may be found in *In re Se. Eye Ctr.-Pending Matters*, 2019 NCBC LEXIS 29 (N.C. Super. Ct. May 7, 2019) ("Summary Judgment Order"). The Court recites here only the background facts and procedural history relevant to the Motions.

4.     After the Summary Judgment Order was entered on July 26, 2019, the Court noticed a jury trial of all remaining issues in this action for December 9, 2019.

(ECF No. 1171.) A few weeks later, on August 13, 2019, Turner, in her purported capacity as the beneficiary of JDPW Trust U/T/A Dated June 8, 2007 ("JDPW Trust" or the "Trust") and through her counsel Harris, filed the Rule 60(b) Motion, by which she sought to remove the Nivison Parties' $2.1 million allowed claim against the Trust and remove the Trust from the current receivership.[1] (Mot. Remove $2.1 Million J. JDPW Trust & Remove JDPW Trust Receivership Pursuant Rule 60(b)(4)(5)(6), ECF No. 1176.) The $2.1 million claim had been allowed and the Trust placed into receivership through this Court's orders dated April 28, 2016. (ECF Nos. 471, 472.)

5.     Because the Rule 60(b) Motion potentially impacted the scope of the issues for trial, the Court continued the jury trial to January 27, 2020. (ECF No. 1181.) Thereafter, on August 22, 2019, Turner, again purporting to act in her capacity as the beneficiary of the Trust, moved to intervene for the limited purpose of making the Rule 60(b) Motion. (Mot. Sole Beneficiary JDPW Trust, Kay Harris Turner, Intervene Pursuant Rule 24 N.C. R. Civ. P., ECF No. 1182.) The Court permitted limited discovery concerning Turner's Motions, (ECF No. 1190), and set a briefing and hearing schedule on the then-pending Motions, (ECF No. 1191).

---

[1] Gerald A. Jeutter, Jr. ("Receiver") has been appointed to serve as receiver over the following entities: Central Carolina Surgical Eye Associates, P.A. ("CCSEA"), EMS Partners, LLC, Southeastern Cataract Laser Center, PLLC, Southeastern Eye Management, Inc., HUTA Leasing, LLC, Kepes Newco, LLC, DRE Newco, LLC, and JDPW Trust (collectively, the "Receivership Entities"). *See Se. Eye Ctr.*, 2019 NCBC LEXIS 29, at *19, n. 4, *20; *Old Battleground Props. v. Cent. Carolina Surgical Eye Assocs., P.A.*, 2015 NCBC LEXIS 19, at *24 (N.C. Super. Ct. Feb. 25, 2015).

6. On September 20, 2019, the Nivison Parties moved to disqualify Harris as counsel for Turner under Rules 1.7 and 3.7 of the North Carolina Rules of Professional Conduct. (Pls.' Mot. Disqualify Douglas S. Harris Counsel Kay Harris Turner [hereinafter "Mot. Disqualify"], ECF 1196.)

7. The Court held a hearing on the Motions on January 8, 2020, at which all parties were represented by counsel and Harris appeared *pro se*. The Motions are ripe for resolution.

## II.

## ANALYSIS

### A.    Motion to Disqualify

8. Although last filed, the Court concludes that the Motion to Disqualify should be determined before Turner's Motions. As explained more fully below, Plaintiffs allege that Harris has conflicts of interest that preclude his representation of Turner in this litigation, including that he will be a material witness offering testimony in conflict with Turner at trial and that he has economic interests in the outcome of the litigation directly opposed to Turner's interests. Because there is an obvious risk that Turner's Motions have been prepared by conflicted counsel, the Court concludes that justice and fairness require that the Motion to Disqualify be decided first, with Turner's Motions decided only if the Motion to Disqualify is denied.

9. Numerous courts around the country have followed this approach under similar circumstances. *See, e.g.*, *Grimes v. District of Columbia*, 794 F.3d 83, 90 (D.C. Cir. 2015) ("[A] plausible claim of conflict must be resolved before allegedly conflicted

counsel or the court takes further action in the case[,]" as "a conflict of interest could affect the fairness and impartiality of the proceeding[.]"); *id.* ("Resolving asserted conflicts before deciding substantive motions assures that no conflict taints the proceeding, impairs the public's confidence, or infects any substantive motion prepared by or under the auspices of conflicted counsel."); *Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 654 (6th Cir. 2013) ("A [trial] court must rule on a motion for disqualification of counsel prior to ruling on a dispositive motion because the success of a disqualification motion has the potential to change the proceedings entirely."); *Sumpter v. Hungerford*, No. 12-717, 2013 U.S. Dist. LEXIS 71119, at *12 (E.D. La. May 20, 2013) (A "motion to disqualify must . . . be resolved first in the interest of fairness and judicial economy[.]"); *see also, e.g.*, *Albert v. Hess Oil V.I. Corp.*, 70 V.I. 316, 335 (V.I. Super. Ct. 2019) ("This Court . . . holds that a motion to disqualify an attorney must be resolved before any other motion."); *Martino v. DeMartino*, No. FA054007219S, 2006 Conn. Super. LEXIS 1878, at *6 (Conn. Super. Ct. June 14, 2006) ("[W]hen the defendant filed this motion to disqualify, action on all other motions was, of necessity, held in abeyance. A motion to disqualify must be resolved before the other pending motions may be decided." (citation omitted)).[2]

10.     The Court now turns to the Motion to Disqualify.

---

[2] Some courts have found an exception to this general rule when a motion to disqualify is pending with a motion to dismiss for lack of subject matter jurisdiction. In that circumstance, those courts have concluded that "it is proper to decide the jurisdictional question first." *Heimer v. Knight*, No. 3:13CV115TSL-JMR, 2013 U.S. Dist. LEXIS 202347, at *2 (S.D. Miss. May 16, 2013) (collecting cases); *see also Dinger v. Gulino*, 661 F. Supp. 438, 442 n.3 (E.D.N.Y. 1987) ("Absent jurisdiction, it would be inappropriate for this Court to enter orders, even regarding a motion to disqualify an attorney[.]"). No such jurisdictional motion is pending here.

11. "Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal." *Braun v. Tr. Dev. Grp., LLC*, 213 N.C. App. 606, 609, 713 S.E.2d 528, 530 (2011) (quoting *Travco Hotels, Inc. v. Piedmont Nat. Gas Co.*, 332 N.C. 288, 295, 420 S.E.2d 426, 430 (1992)).

12. The Nivison Parties first contend Rule 3.7 of the North Carolina Rules of Professional Conduct ("Rule 3.7") bars Harris's further representation of Turner because his multiple roles as a party, a necessary and material witness, and, if permitted to continue, attorney for Turner create a substantial and unavoidable risk of significant jury confusion. (Mem. Law Supp. Mot. Disqualify Douglas S. Harris Counsel Kay Harris Turner 2–8, ECF No. 1197.) Separately, the Nivison Parties argue that Harris's multiple roles as party, material witness, prior counsel for several other parties in the litigation, and current counsel for Turner create a conflict of interest under Rule 1.7 of the North Carolina Rules of Professional Conduct ("Rule 1.7") that has not been waived through Turner's informed consent. (Mem. Law Supp. Mot. Disqualify Douglas S. Harris Counsel Kay Harris Turner 8–15.) The Court addresses each contention in turn.

    1.   <u>Rule 3.7</u>

13. The Nivison Parties first seek disqualification under Rule 3.7, which states:

> (a) A lawyer shall not act as advocate in a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

N.C. Rev. R. Prof. Conduct 3.7(a).

14.     Under Rule 3.7, "testimony is 'necessary' within the meaning of the rule when it is relevant, material, and unobtainable by other means." *State v. Rogers*, 219 N.C. App. 296, 304, 725 S.E.2d 342, 348 (2012) (citation omitted). "If [an attorney is] *likely* to be [a] necessary witness[ ] on a contested issue, then [he or she may be] disqualified pursuant to Rule 3.7." *Braun*, 213 N.C. App. at 610, 713 S.E.2d at 531. "Rule 3.7 prohibits a lawyer from simultaneously serving [as both an advocate and witness] because '[c]ombining the role of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client.' " *Harris & Hilton, P.A. v. Rassette*, 252 N.C. App. 280, 283, 798 S.E.2d 154, 157 (2017) (quoting N.C. Rev. R. Prof. Conduct 3.7, cmt. 1). "Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." N.C. Rev. R. Prof. Conduct 3.7, cmt. 4.

15.     Here, the Receiver has asserted crossclaims on behalf of the Trust against Harris for Harris's alleged misconduct as trustee. Through its Summary Judgment Order, the Court has determined that several of these crossclaims shall go forward to trial, including claims against Harris for professional negligence, (Receiver Gerald A. Jeutter's Answer Cross-cls. Castle McCulloch Entities & Cross-cls. Douglas Harris ¶¶ 472, 477–78 [hereinafter "Rec.'s Cross-cls."], ECF No. 716), breach of fiduciary

duty, (Rec.'s Cross-cls. ¶¶ 481–82), breach of trustee duties, (Rec.'s Cross-cls. ¶¶ 485–86), and constructive fraud, (Rec.'s Cross-cls. ¶¶ 483, 487). Turner, as the Trust's beneficiary, stands to gain from the Receiver's successful prosecution of his crossclaims against Harris to the extent they result in recovery to the Trust. Harris obviously stands to lose if the crossclaims against him are successful and judgment on the crossclaims is entered against him. (*See* Receiver's Cross-cls. ¶¶ 483, 487, 496.)

16.   As a result, Turner's and Harris's interests are in conflict (if not diametrically opposed), and it is virtually certain that Harris will testify as a party witness and advance argument as his own counsel supportive of his position and financial interest and adverse to the Receiver's position and Turner's financial interest. (*See, e.g.*, Index Materials Summ. J. Opp'n Brs. - Ex. A, at 75:1–23, 79:5–87:23, 130:2–140:1, 227:12–230:25, 376:16–378:25, 382:5–384:25, 606:6–607:19, 829:4–831:16, 862:2–868:23, 977:4–980:22 [hereinafter "Harris Dep."], ECF No. 887 (explaining Harris's central role in, interest in, and knowledge about the transaction at issue).) Moreover, Harris and Turner have already offered conflicting deposition testimony concerning material issues in this case, including the circumstances under which the Trust was created and its activity, issues which directly bear on the Court's subject matter jurisdiction over the claims asserted by and against the Trust. (*See* Kay Turner Br. Addressing 6 Nov. 2019 Ct. Order 4, ECF No. 1253 ("The Kay Turner deposition . . . in some ways supports Harris'[s] testimony and in some ways does not.").)

17.     In addition, Harris has previously represented at least five parties in this case, including the Trust, (Harris Dep. 133:18–25, 229:13–25, 382:5–8, 384:2–16), Richard Harris, (Harris Dep. 57:10–21, 229:7–12), Castle McCulloch, Inc., *see, e.g.*, *Castle McCulloch, Inc. v. Freedman*, 169 N.C. App. 497, 610 S.E.2d 416 (2005), C. Richard Epes, M.D., *see, e.g.*, *Epes v. B.E. Waterhouse, LLC*, 221 N.C. App. 422, 728 S.E.2d 390 (2012), and CCSEA, *see, e.g.*, *JG Winston-Salem, LLC v. Cent. Carolina Surgical Eye Assocs., P.A.*, No. COA04-1673, 2006 N.C. App. LEXIS 175 (N.C. Ct. App. Jan. 17, 2006).[3] Indeed, Harris has separately represented two of these parties, JDPW Trust and Richard Harris, in the matters at issue in this very litigation. (Harris Dep. 75:1–13 ("I was there on behalf of JDPW Trust and also on behalf of my brother."), 229:7–12 ("Q.  Who retained you to negotiate this transaction?  A.  My brother."), 229:13–25 ("Q.  Why did the trust have an interest in this particular deal? A. . . . [T]his was a vehicle that I thought would work.  I represent them as trustee and everything.").)  Now Harris seeks to add Turner to this already extensive list.

18.     Based on the foregoing, the Court concludes that Harris is likely, if not certain, to be a necessary witness in the trial of this matter, his testimony will relate to material issues in this litigation and be contested, and his multiplicity of roles—in particular as party, pro se counsel, material witness, and counsel for Turner—will likely lead to significant jury confusion and prejudice to the tribunal and other parties.  The Court further concludes that retaining successor counsel will not work

[3] Harris has also represented another party in these consolidated proceedings, Mark McDaniel.  *See, e.g.*, *McDaniel v. Saintsing*, 817 S.E.2d 912 (N.C. Ct. App. 2018).

a substantial hardship on Turner because the Court will permit such counsel forty-five (45) days from the date of this Order to become informed on the matters at issue in this litigation prior to further Court action that may affect Turner's rights or interests, which the Court believes is an adequate and reasonable period for competent counsel to get up to speed in this case.[4] The Court thus concludes that Harris's representation of Turner in this action violates Rule 3.7 and requires Harris's disqualification.

2. Rule 1.7

19. The Nivison Parties also seek Harris's disqualification under Rule 1.7, which states that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest[,]" which exists if "the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer." N.C. Rev. R. Prof. Conduct 1.7(a). "The critical questions [under Rule 1.7] are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering

---

[4] "In determining whether disqualification would work substantial hardship on the client, the Comments to Rule 3.7(a) call for a balancing 'between the interests of the client and those of the tribunal and the opposing party.'" *Everbank Commer. Fin., Inc. v. Hunoval Law Firm, PLLC*, No. COA18-909, 2019 N.C. App. LEXIS 651, at *6–7 (N.C. Ct. App. Aug. 6, 2019) (quoting N.C. Rev. R. Prof. Conduct 3.7, cmt. 4). "It is relevant [in that determination] that one or both parties could reasonably foresee that the lawyer would probably be a witness." *Id.* at *7 (quoting N.C. Rev. R. Prof. Conduct 3.7, cmt. 4). Harris's foreseeable participation as a necessary witness at trial was, and remains, obvious here. *See, e.g.*, *Luke v. Woodlawn Sch.*, No. COA18-1109, 2019 N.C. App. LEXIS 512, at *6 (N.C. Ct. App. June 4, 2019) ("It is . . . clear that plaintiff's counsel, as a witness to these events [central to the plaintiff's allegations against the defendants], would likely be called to act as a witness.").

alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.* 1.7, cmt. 8. Nevertheless, a lawyer may still represent a client while there is a conflict of interest as long as:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

*Id.* 1.7(b). "Informed consent [under Rule 1.7] requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client." *Id.* 1.7, cmt. 18.

20. While Harris has offered a signed letter from Turner that Harris prepared to be an informed conflict of interest waiver, the letter Turner signed does not fully address the Receiver's crossclaim allegations against Harris beyond Harris's attempt to minimize them. (Ex. 1 Turner's Resp. NFI Mot. Disqualify DSH Att'y Turner [hereinafter "Waiver"], ECF No. 1217 ("The only remaining allegations are from Mr. Fields . . . who claims . . . that I betrayed my fiduciary duty to JDPW Trust. . . . While that is Mr. Fields'[s] view, it is not mine and I do not believe it is yours.").) Nor does the letter address the Receiver's effort to recover funds from Harris for the Trust. (*See* Waiver.) Indeed, Turner testified at her deposition that she has not seen the relevant pleadings in this case, including the crossclaims, and that her knowledge of the crossclaims is limited to only the information she has been told by Harris. (Dep.

Kay Turner 33:4–34:2, 34:10–22, 36:15–37:19, 37:25–39:16, 39:20–40:19, 40:25–41:16, 41:20–42:4, 43:4–8, 44:11–45:3, 53:14–54:5, 56:22–57:13, 59:5–22, 61:14–64:5, 72:2–73:6, 73:11–77:5, ECF No. 1205.1 ("Q. . . . [D]o you have any other understanding, other than Mr. Harris is involved in the case as the trustee of JDPW Trust, as to why he has a conflict of interest that you have to waive? A. . . . I don't know.").)

21.     The Court thus concludes that Turner's written consent was not informed under Rule 1.7 because there is no evidence that Turner was made aware of the "material and reasonably foreseeable ways" that Harris's position adverse to the Trust "could have adverse effects on [her] interests." N.C. Rev. R. Prof. Conduct 1.7, cmt. 18; *see also N.C. State Bar v. Merrell*, 243 N.C. App. 356, 372, 777 S.E.2d 103, 114 (2015) ("Acknowledging that a potential conflict exists, without identifying the potential conflict, does not provide the parties with informed consent. . . . [T]he parties could not give informed consent of dual representation without *full disclosure* from [their attorney]." (emphasis added)); *see also, e.g., Cedar Rapids Bank & Trust Co. v. Mako One Corp.*, 919 F.3d 529, 536 (8th Cir. 2019) (finding no informed consent under the Iowa Rules of Professional Conduct where a consent waiver letter made "no attempt to explain to [the client] the advantages, disadvantages, risks[,] or benefits that [the client] would confront by allowing [the requested representation]"). Therefore, the Court concludes that Harris's continued representation of Turner is in violation of Rule 1.7, an additional basis for disqualification.

B.    Motion to Intervene and Rule 60(b) Motion

22.    In light of the Court's disqualification of Harris as Turner's counsel in this action, the Court concludes, in these circumstances, that it should strike Turner's Motions without prejudice to Turner's right to refile or renew either motion.

23.    The Court reaches this conclusion for several reasons.   First, Turner's Motions were filed by deeply conflicted counsel, and the resulting risk of prejudice or harm to Turner is real.  *See, e.g.*, *Grimes*, 794 F.3d at 91 ("In the event the [trial] court concludes there was a conflict . . . [,] it will have to decide whether the effects were prejudicial or harmless."); *Bowers*, 733 F.3d at 654 ("[W]hen counsel is disqualified, a court should not reach the other questions or motions presented to it through the disqualified counsel."); *see also, e.g.*, *In re Woodruff*, No. 2013-SCC-0030-CIV, 2014 N. Mar. I. LEXIS 14, at *14 (N. Mar. I. Aug 26, 2014) ("If the disqualification motion is granted, pending motions filed by the now-disqualified counsel are void.").

24.    In addition, the reasons advanced by the *Woodruff* court for striking the pending motions filed by disqualified counsel without prejudice apply with equal force here:

> First, the court handling the case cannot know to what extent the disqualified counsel's conflict colored the pending motions; thus, it is safest to give replacement counsel a chance to make an independent judgment.  Second, because the motion has not been decided, it seems equitable to permit replacement counsel the option whether to adopt the disqualified counsel's pending motions.  Third, providing replacement

counsel with this option preserves judicial resources by freeing the court from deciding motions the replacement counsel chooses not to pursue.

*Woodruff*, 2014 N. Mar. I. LEXIS 14, at *14.

25.     Accordingly, based on the foregoing, the Court concludes that the Motion to Intervene, the Rule 60(b) Motion, and any briefs, statements, or materials filed by Harris on behalf of Turner should be stricken and that Turner should have a reasonable time to retain non-conflicted successor counsel to represent her interests in this litigation and to determine whether she wishes to renew or refile the Motion to Intervene, the Rule 60(b) Motion, or any other paper Harris has filed for Turner.

## III.

## CONCLUSION

26.     **WHEREFORE**, the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

a. The Motion to Disqualify is hereby **GRANTED**, and Harris is hereby disqualified as counsel for Turner in this action.

b. The Motion to Intervene, the Rule 60(b) Motion, and all briefs, statements, or supporting materials filed by Harris on behalf of Turner in this action[5] are hereby **STRICKEN** from the record without prejudice to Turner's right to renew or refile any of these motions, briefs, statements, or supporting materials at any time prior to March 16, 2020.

---

[5] These materials include those filed at ECF Nos. 1176, 1177, 1178, 1182, 1183, 1209, 1210, 1216, 1217, 1253, and 1264.

c. The Court shall not take action concerning any pending motion or matter that may affect Turner's rights or interests in this litigation, including the issues raised in the Motion to Intervene and Rule 60(b) Motion, prior to March 16, 2020 to permit Turner an opportunity to retain nonconflicted successor counsel to represent her interests in this litigation.

d. Any successor counsel for Turner is hereby ordered to file a notice of appearance promptly upon retention.

e. The Court intends to convene a status conference after Turner's successor counsel has appeared or, in the event successor counsel for Turner does not appear, no later than March 25, 2020.

**SO ORDERED**, this 30th day of January, 2020.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Chief Business Court Judge